IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAVON PIERCE, | Case No. 1:10-cv-00285 JLT (PC) |
| Plaintiff, | ORDER DISMISSING THE SECOND AMENDED COMPLAINT WITH LEAVE TO |
| vs. | AMEND |
| FERNANDO GONZALES, et al., | (Doc. 19) |
| Defendants. | ORDER DENYING MOTIONS FOR A PRELIMINARY INJUNCTION |
| _____/ | (Docs. 20 & 22) |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's second amended complaint filed May 27, 2010.[1]

**I.     SCREENING**

**A.     Screening Requirement**

The Court is required to review a case in which a prisoner seeks redress from a governmental entity or officer. 28 U.S.C. § 1915A(a). The Court must review the complaint and dismiss any portion

---

[1] Plaintiff filed his original complaint in this action on February 19, 2010 (Doc. 1), an amended complaint on May 10, 2010 (Doc. 10), and the now pending second amended complaint on May 27, 2010 (Doc. 19). Because Plaintiff may amend his pleadings as a matter of right before service of a responsive pleading, see Fed. R. Civ. P. 15(a), the Court will disregard the original and amended complaint, and this action will proceed on the second amended complaint.

1  thereof that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks

2  monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). If the Court

3  determines the complaint fails to state a claim, leave to amend should be granted to the extent that the

4  deficiencies in the pleading can be cured by amendment. Lopez v. Smith, 203 F.3d 1122, 1127-28 (9th

5  Cir. 2000) (en banc).

6  **B.      Section 1983**

7  The Civil Rights Act under which this action was filed provides as follows:

8  Every person who, under color of [state law] . . . subjects, or causes to be subjected, any
   citizen of the United States . . . to the deprivation of any rights, privileges, or immunities
9  secured by the Constitution . . . shall be liable to the party injured in an action at law, suit
   in equity, or other proper proceeding for redress.

10

11  42 U.S.C. § 1983.

12  To plead a § 1983 violation, the plaintiff must allege facts from which it may be inferred that (1)

13  plaintiff was deprived of a federal right, and (2) the person who deprived plaintiff of that right acted

14  under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Collins v. Womancare, 878 F.2d 1145,

15  1147 (9th Cir. 1989). To warrant relief under § 1983, the plaintiff must allege and show that the

16  defendants' acts or omissions caused the deprivation of the plaintiff's constitutionally protected rights.

17  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1993). "A person deprives another of a constitutional right,

18  within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative

19  acts, or omits to perform an act which he is legally required to do that causes the deprivation of which

20  [the plaintiff complains]." Id. There must be an actual causal connection or link between the actions

21  of each defendant and the deprivation alleged to have been suffered by the plaintiff. Monell v. Dept. of

22  Social Services, 436 U.S. 658, 691-92 (1978) (citations omitted).

23  **C.      Rule 8(a)**

24  Complaints are governed by the notice pleading standard set forth in Federal Rule of Civil

25  Procedure 8(a), which provides in relevant part that:

26  A pleading that states a claim for relief must contain:

27  (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court
   already has jurisdiction and the claim needs no new jurisdictional support;

28

2

1    (2) a short and plain statement of the claim showing that the pleader is entitled to relief;
     and

2

3    (3) a demand for the relief sought, which may include relief in the alternative or different
     types of relief.

4    The Federal Rules of Civil Procedure adopt a flexible pleading policy.  Nevertheless, a complaint

5    must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]"  Bell

6    Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47

7    (1957)).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than

8    labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"

9    Twombly, 550 U.S. at 555 (citations and quotations omitted).  The complaint "must contain sufficient

10   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

11   129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 883 (2009) (quoting Twombly, 550 U.S. at 570).  Vague and

12   conclusory allegations are insufficient to state a claim under § 1983.  Ivey v. Board of Regents, 673 F.2d

13   266, 268 (9th Cir. 1982).

14   **II.     THE SECOND AMENDED COMPLAINT**

15   Plaintiff identifies the following as defendants to this action: (1) all mailroom staff members at

16   Tehachapi State Prison ("TSP"); (2) TSP Correctional Officer ("C/O") Razo; (3) TSP Warden Gonzales;

17   (4) the United States Government, including President Barack Obama; (5) the Director of the California

18   Department of Corrections and Rehabilitation ("CDCR"); (6) TSP Appeals Coordinator K. Sampson;

19   (7) Inspector General Shaw; (8) the Office of Internal Affairs; (9) Michael Vu, M.D.; (10) the Captain

20   of Operations; (11) Chief Deputy Warden Holland; (12) Associate Warden J. Negrete; (13) Correctional

21   Lieutenant Dialo; (14) Nurse Evelyn Nagandi; (15) C/O Uribe; and (16) Facility Captain Bryant.  (Doc.

22   19 at 3-5.)  Plaintiff's laundry list of allegations are summarized below.

23   **A.      Law Library Access**

24   Plaintiff complains that the law library at TSP is inadequate.  (Id. at 8.)  Plaintiff alleges that the

25   information in the law library's books and computers is outdated.  (Id.)  Plaintiff also alleges that the

26   prison is often under security lockdowns that prevent prisoners from accessing the law library.  (Id. at

27   8-9.)  Plaintiff contends the security lockdowns are imposed by prison officials who are motivated by

28   overtime pay.  (Id. at 9.)

1       **B.      Mail Service**

2           Plaintiff complains that Defendants Gonzales, Razo, and all the mailroom staff are members of

3   the "Green Wall Staff Prison Gang" who work together to improperly regulate inmate mail at TSP.  (Id.

4   at 11, 14.)  First, Plaintiff alleges that it often takes thirty days or more for inmates to receive mail or

5   packages.  (Id. at 11.)  Plaintiff dismisses the notion that the mailroom is busy.  (Id.)  Rather, Plaintiff

6   alleges that the "Green Wall" gang withhold packages in order to coerce inmates into behaving or to

7   retaliate against inmates for misbehaving.  (Id.)

8           Second, Plaintiff alleges that the "Green Wall" gang open inmate mail and confiscate all mail

9   containing complaints of prison official misconduct.  (Id.)  Plaintiff alleges that this includes mail that

10  is labeled as legal mail or confidential mail.  (Id.)  As an example, Plaintiff indicates that he attempted

11  to send legal/confidential mail on July 20, 2009 and October 14, 2009 to the following organizations:

12  (1) the Prison Focus, (2) the Habeas Corpus Resource Center, (3) the Sentencing Project, (4) the Prison

13  Activist Resource Center, (5) the Fortune Society, and (6) the Partnership for Safety and Justice.  (Id.

14  at 17.)  Plaintiff alleges that on October 16, 2009, this mail was returned to him ripped open, resealed

15  with tape, and with documents missing.  (Id.)  As other examples, Plaintiff indicates that his inmate

16  appeals regarding the mail system have gone missing, as has his motions for preliminary injunctions

17  which were to be filed in this case.  (Id. at 14, 27.)

18      **C.      Laundry Services**

19          Plaintiff complains that inmates are not being provided weekly laundry service as provided by

20  California Code of Regulations, Title 15, Section 3031.  (Id. at 10.)

21      **D.      Religious Services**

22          Plaintiff complains that Muslim inmates have been denied religious services for more than one

23  year at TSP.  (Id.)  According to Plaintiff, prison officials at TSP claim that the Muslim Imam "quit

24  under threats."  (Id.)

25      **E.      Inmate Appeals**

26          Plaintiff complains that inmate appeals addressed to the Appeals Coordinator, the Warden, the

27  Director of the CDCR, the Inspector General, and the Internal Affairs Office are stolen, discarded,

28  ignored, or wrongly decided.  (Id. at 11, 20, 27, 40-59.)

4

1     **F.      Administrative Segregation**

2         Plaintiff complains that he was retained in administrative segregation for retaliatory purposes.

3   (Id. at 15.)  Plaintiff alleges that he was not allowed to enter the general population at TSP and was

4   recommended for transfer based upon false information that Plaintiff was in danger.  (Id.)

5     **G.      Medical Treatment**

6         1.      Plaintiff's Ear

7         Plaintiff alleges that while waiting to be transferred, he was involved in a fight with another

8   inmate.  (Id.)  Plaintiff alleges that during the fight, a piece of his ear was bitten off.  (Id. at 11, 22-23.)

9   Plaintiff alleges that Defendant Nagandi responded to the scene and called Defendant Vu, a physician

10  at TSP.  (Id. at 23.)  Plaintiff alleges that Defendant Vu said the ear was cartilage and that there was

11  nothing that could be done to repair the ear.  (Id.)  According to Plaintiff, Defendant Nagandi then gave

12  Plaintiff antibiotics and a shot for his pain but did not place the severed piece of ear on ice or examine

13  Plaintiff any further.  (Id.)  Plaintiff also alleges that Defendant Nagandi joked about Plaintiff's injury

14  with the other prison officials, calling him "Holyfield."  (Id.)

15        Plaintiff complains that his ear continued to hurt during the night and he was forced to file an

16  emergency complaint to seek medical attention the next morning.  (Id.)  Plaintiff alleges that the nurses

17  cleaned his ear and then took him to see Defendant Vu.  (Id. at 24.)  Plaintiff alleges that Defendant Vu

18  tried to persuade him to cut off the rest of his ear, but Plaintiff refused.  (Id.)  Plaintiff alleges that he was

19  taken to an outside hospital approximately four hours later.  (Id.)

20        2.      Plaintiff's Right Hand

21        Plaintiff complains that pins in his right hand were kept in place for four months, two months

22  longer than necessary.  (Id. at 24-25.)  According to Plaintiff, the pins have caused scarring on his right

23  hand, and he now has difficulty writing.  (Id. at 24-25.)  Plaintiff also alleges that the prison refuses to

24  provide him with a scribe, as prescribed by his physician.  (Id. at 25.)

25        3.      Plaintiff's Sleep Apnea

26        Plaintiff complains that he suffers from sleep apnea and needs a CPAP machine to sleep.  (Id.)

27  Plaintiff alleges that Defendant Vu told him that the prison was not going to pay for the CPAP machine

28  and that his examination to obtain his oxygen measurements was cancelled.  (Id.)  Plaintiff alleges that

1  after he complained, his examination was rescheduled and Defendant Vu told Plaintiff that he would

2  receive the machine within two to three months. (Id.) Plaintiff alleges that after two months had passed

3  and he did not receive a CPAP machine, he complained to Dr. Tate. (Id.) Plaintiff alleges that Dr. Tate

4  informed him that the prison had CPAP machines in the warehouse. (Id. at 26.) Plaintiff concludes that

5  "no reason other than retaliation exist[s] for Dr. Vu to lie to [him] and make [him] wait for a medical

6  appliance that was already at the institution." (Id.)

7  **III.    DISCUSSION**

8       **A.    Law Library Access**

9       Prisoners do *not* have a "freestanding right" to a law library or to legal assistance. Lewis v.

10  Casey, 518 U.S. 343, 351 (1996). Law libraries and legal assistance programs are only the means of

11  ensuring that a prisoner's fundamental right to access the courts is preserved. Id. The accessibility or

12  adequacy of a law library is therefore of constitutional concern only when it thwarts a prisoner from

13  exercising his right to access the courts for the purpose of seeking redress for "claimed violations of

14  fundamental constitutional rights." Id. (quoting Bounds v. Smith, 430 U.S. 817, 825 (1977)). The

15  prisoner must demonstrate that he suffered "actual injury" because of deficiencies in law library access

16  or materials, "such as the inability to meet a filing deadline or to present a claim" in a direct appeal,

17  habeas petition, or a § 1983 action. Lewis, 518 U.S. at 348, 355.

18       Here, Plaintiff fails to allege that he suffered "actual injury" due to the law library's outdated

19  materials or limited access. Plaintiff alludes to a deadline he faced in an action in federal court. (See

20  Doc. 19 at 60.) However, there is no clear indication that Plaintiff was prevented from presenting and

21  pursuing a non-frivolous constitutional claim in court due to inadequacies regarding the law library. It

22  appears that Plaintiff's complaint regarding the law library at TSP is more abstract, that the law library

23  is inadequate for general purposes. This is insufficient to state a cognizable access to the courts claim.

24  See Lewis, 518 U.S. at 351 ("[A]n inmate cannot establish relevant actual injury simply by establishing

25  that his prison's law library or legal assistance program is subpar in some theoretical sense.").

26       **B.    Mail Service**

27       Plaintiff's allegations regarding the mail service at TSP raise five separate issues: (1) whether

28  the censorship of Plaintiff's outgoing mail gives rise to a cognizable claim; (2) whether the inspection

1  of Plaintiff's mail give rise to a cognizable claim; (3) whether delays in receiving packages give rise to

2  a cognizable claim; (4) whether Plaintiff alleges a cognizable access to the courts claim because of the

3  alleged deficiencies in the mail service at TSP; and (5) whether Plaintiff alleges a cognizable retaliation

4  claim regarding these matters.

5                    1.        Censorship of Mail

6          Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d

7  264, 265 (9th Cir. 1995). Prison regulations and practices affecting *incoming* mail must be reasonably

8  related to a legitimate penological interest. See Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).

9  Legitimate penological interests generally include "security, order, and rehabilitation." Procunier v.

10  Martinez, 416 U.S. 396, 413 (1974). In determining the reasonableness of a regulation or practice, a

11  court considers the following factors: (1) whether there is a "valid, rational connection between the

12  regulation and the legitimate government interest put forward to justify it;" (2) "whether there are

13  alternative means of exercising the right;" (3) the impact, if any, the "accommodation of the asserted

14  constitutional right will have on [prison] guards and other inmates;" and (4) "the absence of ready

15  alternatives." Turner v. Safley, 482 U.S. 78, 89-90 (1987).

16          "When a prison regulation affects outgoing mail as opposed to incoming mail, there must be a

17  closer fit between the regulation and the purpose it serves." Witherow, 52 F.3d at 265 (citation and

18  internal quotation marks omitted). In other words, a regulation or practice that affects outgoing mail

19  must be "closely related to a legitimate penological interest." Id. This is because the inherent security

20  risks associated with incoming mail are less pronounced in outgoing mail. See Thornburgh, 490 U.S.

21  at 411-412. However, in neither case, be it outgoing or incoming mail, must the challenged regulation

22  or practice satisfy "a least restrictive means test." Witherow, 52 F.3d at 265 (citing Thornburgh, 490

23  U.S. at 411-13).

24          Here, Plaintiff alleges that his outgoing mail regarding misconduct by prison officials at TSP is

25  either discarded or returned to him unsent. Plaintiff indicates that he attempted to send grievances to

26  various organizations on July 20, 2009 and October 14, 2009. Plaintiff alleges that his grievances were

27  returned to him undelivered and were "ripped open" and missing documents. In Plaintiff's view, his

28  outgoing mail was intercepted by prison officials not for legitimate reasons but because they are trying

1 | to silence his complaints.  Assuming these allegations to be true, as the Court must at this stage of the

2 | litigation, the Court finds that the complaint sufficiently demonstrates an infringement on Plaintiff's

3 | right to send mail under the First Amendment.

4 | However, the complaint falls short of stating a cognizable claim regarding this matter. Plaintiff

5 | apparently identifies the "Green Wall Staff Prison Gang" as defendants to this claim.  This is too vague.

6 | Plaintiff must name specific defendants; naming "all mailroom staff members" will not do.  Moreover,

7 | to the extent that Plaintiff does identify specific individuals as defendants to this claim – Defendants

8 | Gonzales and Razo – Plaintiff fails to allege facts demonstrating an affirmative causal link between the

9 | actions of *each* named defendant and the alleged constitutional deprivation.  See Johnson v. Duffy, 588

10 | F.2d 740, 743 (9th Cir. 1978).  Until Plaintiff alleges such facts, there can be no liability under § 1983.

11 | See Rizzo v. Goode, 423 U.S. 362, 371 (1976).

12 | 2.       Inspection of Mail

13 | "The Supreme Court ha[s] held that [legal] mail *may* be opened in the presence of the addressee

14 | and that prison officials [*can*] require both that the letters be specially marked with the name and address

15 | of the attorney and that the attorney communicate first with prison officials." Sherman v. MacDougall,

16 | 656 F.2d 527, 528 (9th Cir. 1981) (citing Wolff v. McDonnell, 418 U.S. 539, 575-77 (1974) (emphasis

17 | added)).  The Ninth Circuit, however, has left open whether legal mail *must* be opened and read in the

18 | prisoner's presence and whether a prison official's failure to do so constitutes a violation of the First

19 | Amendment.  Sherman, 656 F.2d at 528.  Notably, other circuits have found a constitutional violation

20 | under these circumstances.  See Muhammad v. Pitcher, 35 F.3d 1081, 1083 (6th Cir. 1994); Bach v.

21 | Illinois, 504 F.2d 1100, 1102 (7th Cir. 1974).

22 | Nevertheless, the Court need not reach that issue here.  "Legal mail" in the context of the First

23 | Amendment generally applies to correspondence between a prisoner and his attorney.  See Wolff, 418

24 | U.S. at 575-76; Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996).  In this case, Plaintiff does not

25 | allege that he was sending mail to his attorney.  Rather, Plaintiff alleges that prison officials opened and

26 | read his grievances that were sent to (1) the Prison Focus; (2) the Habeas Corpus Resource Center; (3)

27 | the Sentencing Project; (4) the Prison Activist Resource Center; (5) the Fortune Society; and (6) the

28 | Partnership for Safety and Justice.  There is no indication, however, that any of these organizations were

1   representing Plaintiff in an active civil or criminal case.  It appears that Plaintiff was simply notifying

2   these organizations of his grievances at TSP and soliciting help.  (Doc. 19 at 31-39.)  Thus, while

3   Plaintiff's grievance mail may have been labeled "legal" and/or "confidential" pursuant to prison

4   regulations, it did not enjoy the same protection afforded to "legal mail" within the meaning of the First

5   Amendment.  See O'Keefe v. Van Boening, 82 F.3d 322, 323-27 (9th Cir. 1996) (holding that grievance

6   mail sent to state agencies and state officials may be treated as regular mail).  Accordingly, Plaintiff's

7   allegation that his grievance mail was opened outside his presence fails to state a cognizable claim under

8   the First Amendment.  See, e.g., Johnson v. Rawers, 2008 U.S. Dist. LEXIS 21534, at *17-18 (E.D. Cal.

9   Mar. 19, 2008) (prison officials may open and read a prisoner's grievance mail without violating the

10  First Amendment because such a practice furthers legitimate penological interests) (citing O'Keefe, 82

11  F.3d at 325-27).

12              3.       Delays in Mail

13      Prison officials have a responsibility to forward mail to prisoners promptly.  Bryan v. Werner,

14  516 F.2d 233, 238 (3d Cir. 1975).  Allegations that mail delivery was delayed for an inordinate amount

15  of time is sufficient to state a claim for a violation of the First Amendment.  See Antonelli v. Sheahan,

16  81 F.3d 1422, 1432 (7th Cir. 1996).  A temporary delay or isolated incident of delay, however, does not

17  give rise to a violation of the First Amendment.  See Crofton v. Roe, 170 F.3d 957, 961 (9th Cir. 1999)

18  (citing Sizemore v. Williford, 826 F.2d 608, 610 (7th Cir. 1987)).

19      Here, Plaintiff alleges that he must wait at least thirty days to receive packages, despite prison

20  regulations requiring prison staff to deliver mail within fifteen days.  See Cal. Code Regs., tit. 15, §

21  3134(c)(4).  Plaintiff alleges that the mailroom is not backed-up, as prison staff members indicate, but

22  rather, prison officials withhold incoming mail as a form of punishment and to coerce prisoners to

23  behave.  Assuming these allegations to be true, the Court finds that the complaint presents another

24  example of prison officials infringing on Plaintiff's First Amendment right to receive mail.  However,

25  similar to the allegations regarding the censorship of his mail, Plaintiff fails to state a cognizable claim

26  because he has not sufficiently linked his allegations to specific defendants.  See Rizzo, 423 U.S. at 371.

27  Plaintiff's vague and conclusory allegation that the "Green Wall Staff Prison  Gang" is responsible for

28  improprieties relating to delays in mail service is insufficient in this regard.

9

1          4.      Access to the Courts

2          Plaintiff's allegations regarding deficiencies in the mail service at TSP suggest an access to the

3    courts claim.  As explained above, to establish a violation of the right to access to the courts, a prisoner

4    must allege facts sufficient to show that: (1) a nonfrivolous legal attack on his conviction, sentence, or

5    conditions of confinement has been frustrated or impeded, and (2) he has suffered an actual injury as a

6    result.  Lewis, 518 U.S. at 353-55.  An "actual injury" is defined as "actual prejudice with respect to

7    contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim."

8    Id. at 348.

9          Here, Plaintiff alleges three types of mail were interfered with by prison officials: (1) inmate

10   grievances and appeals; (2) grievance mail to outside organizations; and (3) two motions for injunctive

11   relief that were to be filed in this action.  All three instances of interference fail to demonstrate "actual

12   injury."  First, interference with an inmate's grievances does not, in of itself, prevent an inmate from

13   presenting his claims in court.  Although a defendant may later move to dismiss the action for failure

14   to exhaust, Plaintiff may be excused from the exhaustion requirement if the grievance process has been

15   rendered unavailable by mail interference, as Plaintiff now alleges.  See Sapp v. Kimbrell, 623 F.3d 813,

16   822-23 (9th Cir. 2010).  Accordingly, Plaintiff's allegation that prison officials confiscate his inmate

17   appeals is insufficient, in of itself, to state a cognizable access to the courts claim.

18         Second, mailing grievances to outside organizations and soliciting help is not necessary for

19   Plaintiff to pursue his claims in court.  Although these organizations may provide Plaintiff information

20   that could aid his litigation in some respects, the right of access to the courts does not encompass the

21   right to litigate effectively.  See Lewis, 518 U.S. at 354.  It merely ensures that Plaintiff is able bring his

22   constitutional claims to court.  Id. at 354-55.  Accordingly, these allegations fail to state a cognizable

23   access to the courts claim.

24         And third, Plaintiff's allegation that prison officials confiscated and discarded two motions for

25   injunctive relief which were to be filed in this case lacks merit.  The Court has received both motions.[2]

26   (Docs. 20 & 22.)  Accordingly, the Court concludes that this allegation also fails to state a cognizable

27   access to the courts claim.

28

         [2] The Court addresses these motions later in this order.

1          5.      Retaliation

2          The complaint is rife with allegations that the "Green Wall Staff Prison Gang" is retaliating

3   against Plaintiff for his grievances by stealing his mail.  Under the First Amendment, prison officials

4   may not retaliate against prisoners for initiating litigation or filing administrative grievances.  Rhodes

5   v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).  A viable claim of retaliation entails five basic elements:

6   (1) an assertion that a prison official took some adverse action against an inmate (2) because of (3) the

7   inmate's protected conduct; (4) the adverse action chilled the inmate's exercise of his First Amendment

8   rights; and (5) the adverse action did not reasonably advance a legitimate penological purpose.  Id.;

9   Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994).

10         Here, Plaintiff's allegations regarding retaliation fail to state a cognizable claim for the same

11  reason that Plaintiff fails to state a cognizable claim regarding the censorship and delays in his mail.

12  Plaintiff has not alleged facts that affirmatively link the actions of specific defendants to the alleged

13  deprivations in mail service.  As such, Plaintiff fails to demonstrate that a defendant took an adverse

14  action against him or that such actions were taken *because* Plaintiff filed grievances against prison

15  officials at TSP.  In other words, Plaintiff's allegations regarding each defendant are too vague and

16  conclusory to state a cognizable retaliation claim.

17  **C.      Laundry Service**

18         Plaintiff alleges that inmates at TSP are deprived of weekly laundry service, as required by

19  California's regulations.  The Eighth Amendment, which prohibits cruel and unusual punishment,

20  protects prisoners from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041,

21  1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)).  To plead a violation of the

22  Eighth Amendment in this respect, a prisoner must satisfy an objective and a subjective requirement.

23  See Wilson v. Seiter, 501 U.S. 294, 298 (1991).  First, a prisoner must demonstrate that he suffered an

24  objectively serious deprivation, one that amounts to a denial of "the minimal civilized measure of life's

25  necessities."  Rhodes v. Chapman, 452 U.S. 337, 346 (1981).  Second, a prisoner must demonstrate that

26  prison officials acted with sufficiently culpable states of mind, that of "deliberate indifference."  Wilson,

27  501 U.S. at 303.  A prison official is liable for denying an inmate humane conditions of confinement

28  only if "the official knows of and disregards an excessive risk to inmate health and safety; the official

1    must both be aware of facts from which the inference could be drawn that a substantial risk of serious

2    harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

3         Here, Plaintiff's bare allegation that inmates at TSP are denied weekly laundry service satisfies

4    neither the objective nor the subjective requirement of a viable Eighth Amendment claim. Plaintiff does

5    not allege that the prison's laundry service is so deficient that it effectively deprives him of basic hygiene

6    and sanitation. See Toussaint v. McCarthy, 597 F. Supp. 1388, 1411 (9th Cir. 1984) (personal hygiene

7    is guaranteed by the Eighth Amendment). Nor does Plaintiff allege that any of the named defendants

8    knew of but disregarded an excessive risk to Plaintiff's health due to deficiencies in the laundry service.

9    Again, like most of his claims, Plaintiff fails to affirmative link any of the named defendants with his

10   allegations. Accordingly, Plaintiff fails to state a cognizable Eighth Amendment claim regarding TSP's

11   laundry service.

12        **D.      Religious Services**

13        Plaintiff alleges that Muslim inmates were denied religious services for over a year. "Inmates

14   clearly retain protections afforded by the First Amendment . . . including its directive that no law shall

15   prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citations

16   omitted). However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many

17   privileges and rights, a retraction justified by the considerations underlying our penal system." Id.

18   (citation and internal quotation marks omitted). A prison regulation may therefore impinge upon an

19   inmate's right to exercise his religion if the regulation is "reasonably related to legitimate penological

20   interests." Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008) (citations omitted). In contesting the

21   validity of a prison regulation, an inmate must also show that his religious practice is "sincerely held"

22   and "rooted in religious belief. Id. at 884-85.

23        A prisoner's ability to freely exercise his religion is also protected by the Religious Land Use and

24   Institutionalized Persons Act ("RLUIPA"). 42 U.S.C. § 2000cc-1. Under RLUIPA, prison officials are

25   prohibited from imposing "substantial burdens" on religious exercise unless there exists a compelling

26   governmental interest and the burden is the least restrictive means of satisfying that interest. Alvarez

27   v. Hill, 518 F.3d 1152, 1156 (9th Cir. 2008) (citing Warsoldier v. Woodford, 418 F.3d 989, 994 (9th

28   Cir. 2005)). For the purposes of RLUIPA, a "substantial burden" is one that imposes a "significantly

1  great restriction or onus" upon a prisoner's exercise of religion.  Warsoldier, 418 F.3d at 995 (citation

2  omitted).

3  　　　The allegations in Plaintiff's complaint are too vague to state a cognizable claim under the First

4  Amendment or RLUIPA.  First, it remains unclear whether Plaintiff is of the Muslim faith.  Similar to

5  his other claims, Plaintiff's allegations are phrased in general terms, leaving the Court uncertain as to

6  whether Plaintiff is complaining of conditions that affect him personally or affect the prison population

7  at TSP in general.  Second, Plaintiff fails once again to affirmatively link these allegations to any of the

8  named defendants.  See Rizzo, 423 U.S. at 371.

9  　　　**E.　　Inmate Appeals**

10  　　　Plaintiff appears to allege that Defendant Sampson, Defendant Gonzales, the Director of the

11  CDCR, the Inspector General, and the Internal Affairs Office ignore his inmate grievances and appeals.

12  It is well-established that "inmates lack a separate constitutional entitlement to a specific prison

13  grievance procedure."  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams,

14  855 F.2d 639, 640 (9th Cir. 1988)).  When a prison official fails to process or respond to an inmate's

15  grievance, he does not, without more, commit a constitutional violation.  See Buckley v. Barlow, 997

16  F.2d 494, 495 (8th Cir. 1993) (prison grievance system is procedural and does not afford an inmate

17  separate substantive rights).  Accordingly, Plaintiff's allegations regarding his inmate appeals do not,

18  in of themselves, state a cognizable claim under § 1983.

19  　　　**F.　　Administrative Segregation**

20  　　　Plaintiff's allegation that he was confined in administrative segregation and prevented from

21  joining the general prison population based upon false information regarding his safety is properly

22  analyzed under the Due Process Clause of the Fourteenth Amendment.  Under the Due Process Clause,

23  state action may not deprive a person of life, liberty, or property without due process of law.  U.S. Const.

24  amend XIV.  A plaintiff alleging a due process violation must first demonstrate that he was deprived of

25  a liberty or property interest protected by the Due Process Clause and then show that the procedures

26  attendant upon the deprivation were not constitutionally sufficient.  Ky. Dep't of Corr. v. Thompson,

27  490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002); Brewster v. Bd.

28  of Educ., 149 F.3d 971, 982 (9th Cir. 1998).

13

1    A protected liberty interest may arise under the Due Process Clause itself or under a state statute

2  or regulation. Wilkinson v. Austin, 545 U.S. 209, 221-22 (2005). The Due Process Clause in of itself

3  protects only those interests that are implicit in the word "liberty." See, e.g., Vitek v. Jones, 445 U.S.

4  480, 493 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to a mental

5  institution). A state statute or regulation, however, gives rise to a protected liberty interest if it imposes

6  conditions of confinement that constitute an "atypical and significant hardship [on the prisoner] in

7  relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). See, e.g.,

8  Wilkinson, 545 U.S. at 223-24 (finding that the placement of prisoners in a highly restrictive "supermax"

9  prison implicated a protected liberty interest).

10    Here, Plaintiff has failed to allege facts demonstrating that he was subjected to an atypical and

11  significant hardship. Confinement in administrative segregation, even if based upon allegedly false

12  information, is neither atypical nor significant. See May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997)

13  ("[A]dministrative segregation falls within the terms of confinement ordinarily contemplated by a

14  sentence.") (citing Toussaint v. McCarthy, 801 F.2d 1080, 1091-92 (9th Cir. 1986)). Thus, Plaintiff's

15  allegations regarding his confinement in administrative segregation fail to implicate a protected liberty

16  interest and therefore fail to state a cognizable due process claim. See, e.g., Smith v. King, 2007 U.S.

17  Dist. LEXIS 7702, at *9 (E.D. Cal. Feb. 2, 2007) (dismissing for failure to state a claim plaintiff's

18  allegation that he was confined in administrative segregation based upon false information).

19    To the extent that Plaintiff alleges that his placement in administrative segregation was done for

20  retaliatory purposes, Plaintiff fails to state a cognizable claim. Plaintiff has failed to allege facts that

21  affirmatively link this adverse action to any named defendant. Moreover, Plaintiff has failed to show

22  a causal nexus between this adverse action and a specific exercise of protected conduct by Plaintiff. The

23  general fact that Plaintiff has filed inmate grievances regarding prison official misconduct in the past

24  does not suddenly convert all adverse actions taken against Plaintiff into retaliatory acts.

25    **G.    Medical Treatment**

26    Plaintiff alleges that prison officials provided him inadequate medical care with respect to his

27  (1) ear, (2) right hand, and (3) sleep apnea. To state a claim for the violation of the Eighth Amendment

28  based on inadequate medical care, a plaintiff must allege "acts or omissions sufficiently harmful to

14

1    evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

2    In other words, the plaintiff must show: (1) an objectively serious medical need; and (2) a deliberately

3    indifferent response by the defendant. Conn v. City of Reno, 572 F.3d 1047, 1055 (9th Cir. 2009)

4    (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

5        A medical need is serious "if the failure to treat the condition could result in further significant

6    injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059

7    (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir.

8    1997). The existence of an injury that a reasonable doctor or patient would find important and worthy

9    of comment or treatment; the presence of a medical condition that significantly affects an individual's

10    daily activities; or the existence of chronic and substantial pain are examples of indications that a person

11    has a serious need for medical treatment. McGuckin, 974 F.2d at 1059-60 (citations omitted).

12        A prison official acts with deliberate indifference if he knowingly fails to respond to a serious

13    medical need, thereby inflicting harm on the plaintiff. See Farmer, 511 U.S. at 838-842; Jett, 439 F.3d

14    at 1096. "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th

15    Cir. 2004). "Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of

16    action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S.

17    at 105-06). A difference in opinion between a physician and his patient regarding the best course of

18    treatment is also insufficient to demonstrate deliberate indifference. Jackson v. McIntosh, 90 F.3d 330,

19    332 (9th Cir. 1996).

20        1.    Ear Injury

21       Plaintiff's allegations against Defendants Nagandi and Vu regarding the treatment of Plaintiff's

22    ear fail to state a cognizable inadequate medical care claim. The injury to Plaintiff's ear appears to have

23    been a serious one. However, the facts do not demonstrate that either defendant acted with deliberate

24    indifference. According to the complaint, Defendant Nagandi responded to Plaintiff's injury by calling

25    Defendant Vu regarding the appropriate course of treatment for the injured ear. When informed that

26    nothing could be done to repair the ear, Defendant Nagandi gave Plaintiff antibiotics and a shot for the

27    pain. Although Plaintiff argues that Defendant Nagandi should have placed his severed ear piece on ice

28    and examined him further, this does not demonstrate a substantial deprivation of medical treatment; it

1   simply reflects a difference in opinion regarding proper treatment, which alone is insufficient to impose

2   liability under the Eighth Amendment in a § 1983 action.  See Jackson, 90 F.3d at 332; Franklin v.

3   Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) ("A difference of opinion between a prisoner-patient and

4   prison medical authorities regarding treatment does not give rise to a § 1983 claim.").

5          As to Defendant Vu, the physician examined Plaintiff the following day.  Defendant Vu advised

6   Plaintiff at that time to sever the rest of his ear.  Even assuming this advice was medically unacceptable,

7   Plaintiff was not harmed.  Plaintiff rejected Defendant Vu's recommended course of treatment, and in

8   response, Defendant Vu had Plaintiff transported to an outside hospital just four hours later for further

9   treatment.  In the absence of facts demonstrating that Plaintiff was harmed by Defendant Vu, there can

10  be no showing of deliberate indifference.  See Jett, 439 F.3d at 1096 (defendant's actions must cause

11  harm to rise to the level of deliberate indifference).

12              2.      Right Hand

13         Plaintiff's allegation that the pins in his right hand were not timely removed also fails to state

14  a cognizable inadequate medical care claim.  Plaintiff does not link these allegations to any specific

15  defendant.  There is no indication as to who may have been responsible for the procedure or who may

16  have been aware of Plaintiff's need for treatment with respect to his right hand.  Again, unless Plaintiff

17  affirmatively links the actions of a specific defendant with the alleged constitutional violation, there can

18  be no liability under § 1983.  See Rizzo, 423 U.S. at 371.

19              3.      Sleep Apnea

20         Plaintiff's allegation that Defendant Vu deprived him of a CPAP machine for his sleep apnea

21  fails to state a cognizable inadequate medical care claim.  Plaintiff's condition appears to have been a

22  serious medical need.  However, once again, Plaintiff has not alleged facts demonstrating deliberate

23  indifference.  Plaintiff alleges that Defendant Vu informed him that it would take two to three months

24  for the CPAP machine to be delivered.  Plaintiff alleges that after waiting two months, to no avail, he

25  asked Dr. Tate whether TSP had any CPAP machines.  According to Plaintiff, Dr. Tate stated that the

26  prison did.  Be that as it may, Plaintiff fails to allege *facts* demonstrating that Defendant Vu knew that

27  the prison had CPAP machines in the prison warehouse and despite that knowledge deprived Plaintiff

28  of the device.  Plaintiff's bare and conclusory assumption that Defendant Vu had such knowledge but

16

1    sought to retaliate against Plaintiff is insufficient in this regard.  See Iqbal, 129 S. Ct. at 1949 ("[A]

2    complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement.")

3    (citation and internal quotation marks and brackets omitted).

4         **H.     Leave to Amend**

5         The Court will provide Plaintiff with the opportunity to file a third amended complaint curing

6    the deficiencies identified by the Court in this order.  See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th

7    Cir. 1987) ("A pro se litigant must be given leave to amend his or her complaint unless it is absolutely

8    clear that the deficiencies of the complaint could not be cured by amendment.") (internal quotations

9    omitted).  However, if Plaintiff elects to file a third amended complaint, he is cautioned that he may not

10   reassert the same laundry list of allegations and claims presented in the second amended complaint.

11   Plaintiff must choose.

12        Federal Rule of Civil Procedure 18(a) provides: "A party asserting a claim to relief as an original

13   claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternative

14   claims, as many claims, legal, equitable, or maritime as the party has against an opposing party."  Fed.

15   R. Civ. P. 18(a).  In addition, Federal Rule of Civil Procedure 20(a)(2) provides: "Persons . . . may be

16   joined in one action as defendants if any right to relief is asserted against them jointly, severally, or in

17   the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions

18   or occurrences . . . ."  Fed. R. Civ. P. 20(a)(2).  Thus, for example, Plaintiff may elect to pursue all his

19   claims against Defendant Vu.  Or, Plaintiff may elect to pursue all his claims regarding the mail service

20   at TSP.  However, Plaintiff may not purse his inadequate medical care claims against Defendant Vu and

21   his claims regarding the mail service at TSP all in the same action.  "Unrelated claims against different

22   defendants belong in different suits . . . ."  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

23        Plaintiff is also cautioned that once he files his third amended complaint, his prior pleadings are

24   superceded and no longer serve any function in the case.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir.

25   1967).  Thus, the third amended complaint must be "complete in itself without reference to the prior or

26   superceded pleading."  Local Rule 220.  "All causes of action alleged in an original complaint which are

27   not [re-]alleged in an amended complaint are waived."  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir.

28   1987) (citations omitted).

1    **IV.    MOTIONS FOR PRELIMINARY INJUNCTIONS**

2         Also pending before the Court are Plaintiff's June 21, 2010 and July 6, 2010 motions seeking

3    a preliminary injunction in this matter.  (Docs. 20 & 22.)  In both motions, Plaintiff argues that it is

4    necessary to preserve the evidence which will support his claims and which is currently in the custody

5    of Defendant Gonzales, the warden at TSP.  (Doc. 20 at 2; Doc 22 at 3.)  In particular, Plaintiff seeks

6    to preserve all staff complaints, inmate grievances, and mail logs at TSP.  (Doc. 20 at 1.)

7         Plaintiff's requests for injunctive relief are premature.  "A federal court may issue an injunction

8    if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not

9    attempt to determine the rights of persons not before the court." Zepeda v. United States Immigration

10   Service, 753 F.2d 719, 727 (9th Cir. 1985).  Here, the Court has yet to find that Plaintiff's allegations

11   state a cognizable claim and has yet to authorize service on any of the defendants.  As such, the Court

12   lacks jurisdiction to issue an injunction against any of the defendants at this time.

13   **V.    CONCLUSION**

14        In accordance with the above, **IT IS HEREBY ORDERED** that:

15        1.    Plaintiff's June 21, 2010 motion for an injunction (Doc. 20) is **DENIED**;

16        2.    Plaintiff's July 6, 2010 motion for a preliminary injunction (Doc. 22) is **DENIED**;

17        3.    Plaintiff's second amended complaint (Doc. 19) is **DISMISSED**;

18        4.    Plaintiff is granted thirty (30) days from the date of this order to file a third amended

19             complaint that complies with the requirements of the Federal Rules of Civil Procedure

20             and the Local Rules; the third amended complaint must bear the docket number assigned

21             to this case and must be labeled "Third Amended Complaint";

22        5.    The Clerk of the Court is directed to send Plaintiff the form complaint for use in a civil

23             rights action; and

24        6.    Plaintiff is cautioned that failure to comply with this order will result in the dismissal of

25             this case.

26   IT IS SO ORDERED.

27   Dated:    **February 17, 2011**                              **/s/ Jennifer L. Thurston**
                                                          UNITED STATES MAGISTRATE JUDGE
28

18