IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAVON PIERCE,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>FERNANDO GONZALES, et al.,<br><br>　　　　　Defendants. | Case No. 1:10-cv-00285 JLT (PC)<br><br>**ORDER DISMISSING ACTION FOR FAILURE TO STATE A CLAIM**<br><br>(Doc. 25) |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. By order filed February 18, 2011, the Court dismissed Plaintiff's second amended complaint with leave to amend. (Doc. 24) Now pending before the Court is Plaintiff's third amended complaint filed March 17, 2011. (Doc. 25)

**I.   SCREENING REQUIREMENT**

The Court is required to review a case in which a prisoner seeks redress from a governmental entity or officer. 28 U.S.C. § 1915A(a). The Court must review the complaint and dismiss any portion thereof that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). If the Court determines the complaint fails to state a claim, leave to amend should be granted to the extent that the deficiencies in the pleading can be cured by amendment. Lopez v. Smith, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

The Civil Rights Act under which this action was filed provides a cause of action against any "person who, under color of [state law] . . . subjects, or causes to be subjected, any citizens of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States.]" 42 U.S.C. § 1983. To prove a violation of § 1983, a plaintiff must establish that (1) the defendant deprived him of a constitutional or federal right, and (2) the defendant acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Collins v. Womancare, 878 F.2d 1145, 1147 (9th Cir. 1989). "A person deprives another of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1993) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). In other words, there must be an actual causal connection between the actions of each defendant and the alleged deprivation. See Rizzo v. Goode, 423 U.S. 362, 370-71 (1976).

"Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1975)). Nevertheless, a plaintiff's obligation to provide the grounds of entitlement to relief under Rule 8(a)(2) requires more than "naked assertions," "labels and conclusions," or "formulaic recitation[s] of the elements of a cause of action." Twombly, 550 U.S. at 555-57. The complaint "must contain sufficient *factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 239 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 883 (2009) (quoting Twombly, 550 U.S. at 570) (emphasis added).

II.   **THE THIRD AMENDED COMPLAINT**

Plaintiff identifies Tehachapi State Prison ("TSP") Warden Fernando Gonzales, the TSP mailroom staff on the dates in question, the State Director of Corrections, and the State Office of Internal Affairs as the defendants to this action. (Doc. 25 at 5-6.) Plaintiff seeks an investigative hearing, appointment of counsel, criminal prosecution of defendants, and "$275,000.00 for each

book/manuscript including separate royalties," apparently in the amount of "$10,000,000 for each book/manuscript screen play." (Doc. 25 at 7.)  His claims are based upon the following allegations:

> I sent out multiple letters to different organizations which also employ legal clerks, attorneys, and assist inmates in seeking legal help by providing addresses to other organizations that may be able to help bring attention to the continuos [sic] human violations being ignored and carried out by prison officials.
>
> …
>
> The envelope left my door sealed with proper postage to be delivered to the address located on the envelope.  When the envelope reached an unknown at this time individual located in the mailroom (or individuals which can only be discovered through discovery and/or deposition).  My mail was opened and its full contents removed out of my presence.
>
> After removing these contents which were manuscripts, the contents were never returned.  I sent this manuscript out for legal purposes, which included legal editing, copyrights and all the legal meaning connected to the process of publishing this material.  Regardless of the contents, the manuscripts weather [sic] not legal/ [sic] or confidential in nature, weather [sic] it was illegal, was still personal property of the inmate that was taken without due process.

(Doc. 25 at 8.)

Plaintiff contends his mail was stolen or returned unsent in retaliation for complaints about illegal conduct on the part of correctional officers, TSP staff, and CDCR officials.  Much of the third amended complaint is devoted to allegations detailing the illegal conduct, including denial of access to an adequate law library, the ignoring of Plaintiff's inmate grievances and appeals, transfer to administrative segregation and illegitimate lockdowns of the general inmate population and the planting of a weapon by Correctional Officer Razo. (Doc. 25 at 9, 10, 13-15.)

**III.    DISCUSSION**

In its order dismissing Plaintiff's second amended complaint, this Court admonished Plaintiff against proffering a "laundry list" of unrelated claims against different defendants.  (Doc. 24 at 17.)  Nevertheless, Plaintiff persists in alleging broad and vague violations of the First, Fifth, Eighth and Fourteenth Amendments.  (Doc. 25 at 7.)

**A.    Law Library Access**

The Constitution guarantees prisoners the right of meaningful access to the courts. Bounds v. Smith, 430 U.S. 817, 824, 828 (1977), overruled in part by Lewis v. Casey, 518 U.S.

343 (1996); Johnson v. Avery, 393 U.S. 483, 485 (1969). This right of access imposes an affirmative duty on prison officials to help inmates prepare and file legal papers either by establishing an adequate law library or by providing adequate assistance from persons trained in the law. Phillips v. Hust, 477 D.3d 1070, 1078 (9th Cir. 2007), vacated and remanded on other grounds, 129 S. Ct. 1036 (2009); Lindquist v. Idaho State Bd. of Corr., 776 F.2d 851, 851-56 (9th Cir. 1985). Denial of access to legal materials for a short period of time is not necessarily a constitutional violation, and some restrictions on a prisoner's access to legal resources are allowed to accommodate legitimate administrative concerns. Casey v. Lewis, 4 F.3d 1516, 1523 (9th Cir. 1993). Prisoners must demonstrate actual injury resulting from a denial of access to the courts to support a claim alleging a constitutional violation. Lewis v. Casey, 518 U.S. 343, 349 (1996); Jones v. Blanas, 393 F.3d 918, 936 (9th Cir. 2004). In addition, the right of access to courts does not provide an independent right for an inmate to assist fellow inmates on legal matters. Shaw v. Murphy, 532 U.S. 223, 230-31 (2001).

Plaintiff reiterates his complaints about the inadequacy of the TSP law library addressed in the Court's order dismissing the second amended complaint. (Doc. 24 at 6.) Plaintiff's third amended complaint fails to allege that Plaintiff suffered "actual injury" due to the law library's outdated materials. Plaintiff states, "Because I dont/didnt [sic] know the law, part of my federal petition has been denied as second or suceesive [sic] possibly barring me forever in federal court with me losing the rest of my liufe [sic] based upon an inadequate law library. (Doc. 25 at 10.) However, there remains no clear indication that Plaintiff was prevented from presenting and pursuing a non-frivolous constitutional claim in court due to inadequacies regarding the law library. It continues to appear that Plaintiff's complaint regarding the law library at TSP is more abstract and that the law library is inadequate for general purposes. (Id.) This is insufficient to state a cognizable access to the courts claim. See Lewis, 518 U.S. at 351 ("[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.").

**B.     Inmate Appeals**

Plaintiff persists in his allegation that Defendant Gonzales, the Director of the CDCR, the

Inspector General, and the Internal Affairs Office ignore his inmate grievances and appeals.  It is well-established that "inmates lack a separate constitutional entitlement to a specific prison grievance procedure."  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).  When a prison official fails to process or respond to an inmate's grievance, he does not, without more, commit a constitutional violation.  See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (prison grievance system is procedural and does not afford an inmate separate substantive rights).  Accordingly, Plaintiff's allegations regarding his inmate appeals do not state a cognizable claim under § 1983.

### C.    Administrative Segregation

Under the Due Process Clause of the Fourteenth Amendment, state action may not deprive a person of life, liberty or property without due process of law.  U.S. Const. Amend. XIV.  A plaintiff alleging a due process violation must first demonstrate that he was deprived of a liberty of property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient.  Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002); Brewster v. Bd. of Educ., 149 F.3d 971, 982 (9th Cir. 1998).

A protected liberty interest may arise under the Due Process Clause itself or under a state statute or regulation.  Wilkinson v. Austin, 545 U.S. 209, 221-22 (2005).  The Due Process Clause in of itself protects only those interest that are implicit in the word "liberty."  See, e.g., Vitek v. Jones, 445 U.S. 480, 493 (1980).  A state statute or regulation, however, gives rise to a protected liberty interest if it imposes conditions of confinement constituting an "atypical and significant hardship [on the prisoner] in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).  See, e.g., Wilkinson, 545 U.S. at 223-24 (finding that the placement of prisoners in a highly restrictive "supermax" prison implicated a protected liberty interest).

Formally imposed punishment is cruel and unusual if it involves the "unnecessary and wanton infliction of pain," such as punishment "totally without penological justification" or "grossly out of proportion to the severity of the crime."  Gregg v. Ga., 428 U.S. 153, 173, 183

(1976). The Supreme Court has stated, however, that harsh conditions and rough disciplinary treatment are part of the price that convicted individuals must pay for their offenses against society. Rhodes v. Chapman, 452 U.S. 337, 347-49 (1981); May v. Baldwin, 109 F.3d 557, 565-66 (9th Cir. 1997).

A prisoner challenging official conduct that is not part of the formal penalty for a crime must demonstrate: (1) a "sufficiently serious deprivation; and (2) that officials acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' . . . are sufficiently grave to form the basis of an Eighth Amendment violation." Id. at 298 (quoting Rhodes, 452 U.S. at 347 (citation omitted)).

Plaintiff's third amended complaint ignores this Court's direction with regard to his claims concerning administrative segregation and general population lockdown in that Plaintiff persists in his failure to demonstrate subjection to an atypical or significant hardship or to show a causal nexus between these adverse actions and a specific exercise of protected conduct. Confinement in administrative segregation, even if based upon allegedly false information, is neither atypical nor significant. See May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) ("[A]dministrative segregation falls within the terms of confinement ordinarily contemplated by a sentence.") (citing Toussaint v. McCarthy, 801 F.2d 1080, 1091-92 (9th Cir. 1986)).

In sum, Plaintiff fails to remedy the deficiencies outlined in the Court's order dismissing the second amended complaint with regard to the aforementioned allegations. It seems Plaintiff persists in detailing the above contentions not as claims in and of themselves, but as indications of the perceived basis for and as evidence of his actual claim—the retaliatory censorship of his outgoing mail.[1]

**D.    Mail Service**

As described above and in previous orders, Plaintiff suggests the TSP mailroom staff are members of the "Green Wall Staff Prison Gang" who improperly regulate inmate mail at TSP by

---

[1] If he claims otherwise, he has, clearly, refused this Court's invitation to so clarify.

opening and confiscating mail containing complaints of prison official misconduct, including that labeled as "legal" or "confidential" mail. (Doc. 24 at 4; Doc. 25 at 8, 15.)

Prison officials may not interfere with prisoners' exercise of First Amendment rights unless the interference is reasonably related to a legitimate penal interest. Overton v. Bazzetta, 539 U.S. 126, 133-35 (2003); Mauro v. Arpaio, 188 F.3d 1054, 1059 (9th Cir. 1999). Similarly, prison officials may not retaliate against a prisoner for exercising his First Amendment rights. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005). Inmates have the right to send and receive information, subject to limits "reasonably related" to legitimate penal interests. Thornburgh v. Abbot, 490 U.S. 401 414-15 (1989); Wolff v. McDonnell, 418 U.S. 539, 574-77 (1974). Incoming correspondence from either other inmates or non-inmates may be prohibited if it is "detrimental to the security, good order, or discipline of the institution or . . . might facilitate criminal activity" (Thornburgh, 490 U.S. at 416; see also 28 C.F.R. § 540.71(b). However, because outgoing correspondence is less likely to pose a threat to internal prison security, any regulation or censorship of outgoing correspondence must "further an important or substantial governmental interest" and be "no greater than is necessary" to achieve that penological interest. Procunier v. Martinez, 416 U.S. 396, 413-16 (1974), overruled on other grounds by Thornburgh, 490 U.S. at 411.

As with the above reiterations of his prior claims, Plaintiff fails to respond to the guidance offered in this Court's order dismissing the second amended complaint. Although Plaintiff was cautioned that his third amended complaint was required to be complete in itself without reference to prior superseded pleadings, the complaint names TSP "mailroom staff on dates in question" yet makes no mention of the dates on which the tampering is alleged to have occurred. (Doc. 25 at 2.) Nevertheless, the Court refers to previous pleadings and notes that Plaintiff indicated he attempted to send legal/confidential mail to various legal aid centers and clinics on July 20, 2009 and October 14, 2009. (Doc. 19 at 11.) The reference to staff "on dates in question" and the addition of the word "sergeant" (Doc. 25 at 2) constitute Plaintiff's sole attempts to comply with the Court's direction. This form of identification remains too vague. Plaintiff was admonished that he "must name specific defendants; naming 'all mailroom staff

members' will not do." (Doc. 24 at 8.) As with his other allegations, Plaintiff merely reiterates, with slight and vague modification, the claims in his second amended complaint previously addressed.

Furthermore, as detailed in this Court's order dismissing the second amended complaint, the Court need not reach the issue of whether legal mail must be opened and read in the prisoner's presence since there is no indication any of the intended recipient organizations in question represented Plaintiff in an active civil or criminal case and it appears Plaintiff was simply soliciting help. (Doc. 25 at 8.) "Legal mail" in the context of the First Amendment generally applies to correspondence between a prisoner and his attorney. See Wolff v. McDonnell, 418 U.S. 539, 575-76 (1974); Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996). In this case, Plaintiff does not allege that he was sending mail to his attorney. Rather, Plaintiff alleges that prison officials opened and read his grievances that were sent to (1) the Prison Focus; (2) the Habeas Corpus Resource Center; (3) the Sentencing Project; (4) the Prison Activist Resource Center; (5) the Fortune Society; and (6) the Partnership for Safety and Justice. (Doc. 25 at 8, 18.) Thus, while Plaintiff's grievance mail may have been labeled "legal" and/or "confidential" pursuant to prison regulations, it did not enjoy the same protection afforded to "legal mail" within the meaning of the First Amendment. See O'Keefe v. Van Boening, 82 F.3d 322, 323-27 (9th Cir. 1996)." Accordingly, Plaintiff's allegation that his grievance mail was opened outside his presence fails to state a cognizable claim under the First Amendment. See, e.g., Johnson v. Rawers, 2008 WL 2219307 (E.D. Cal. May 27, 2008) (prison officials may open and read a prisoner's grievance mail without violating the First Amendment because such a practice furthers legitimate penological interests) (citing O'Keefe, 82 F.3d at 325-27).

In addition, although Plaintiff seems to believe his mail is being tampered with due, at least in part, to his complaints about the conduct of Correctional Officer Razo (Doc. 25 at 9), he continues to fail to allege facts demonstrating an affirmative causal link between the actions of Officer Razo and the alleged constitutional deprivation. See Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). As previously noted, the general fact that Plaintiff has filed inmate grievances

regarding prison official misconduct does not suddenly convert all adverse actions taken against Plaintiff into retaliatory acts. (Doc. 24 at 14.)

The Court declines to afford Plaintiff the opportunity to file a fourth amended complaint. In two prior screening orders the Court has advised Plaintiff of the legal standards that govern the claims he attempts to present. Specifically, the Court has advised Plaintiff that he may not pursue unrelated claims against different defendants in the same action and, where appropriate, outlined the modifications necessary to state cognizable claims. (Doc. 24 at 17.) Plaintiff has repeatedly failed to respond to the Court's guidance in these regards.

## IV.    CONCLUSION

Accordingly, for the reasons set forth above, it is HEREBY ORDERED that:

1. This action is DISMISSED for Plaintiff's failure to state a cognizable claim;
2. This dismissal shall count as a strike pursuant to 28 U.S.C. § 1915(g); and
3. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **November 30, 2012**               /s/ Jennifer L. Thurston
                                                                        UNITED STATES MAGISTRATE JUDGE